137 Wis.2d 217 (1987)
404 N.W.2d 79
IN RE the FINDING OF CONTEMPT IN the INTEREST OF J.S. & M.S., Persons Under the Age of 18 Years: C.S., Appellant,[]
v.
RACINE COUNTY, Respondent.
Nos. 85-2172, 85-2379.
Court of Appeals of Wisconsin.
Submitted on briefs December 12, 1986.
Decided February 11, 1987.
*218 For the appellant the cause was submitted on the briefs of Virginia Pomeroy, assistant state public defender.
For the respondent the cause was submitted on the brief of Randy S. Bragdon, assistant corporation counsel for Racine County.
*219 An amicus curiae brief was filed by Bronson C. La Follette, attorney general and Donald P. Johns, assistant attorney general,[] attorneys for the Honorable Dennis J. Barry.
Before Scott, C.J., Brown, P.J., and Nettesheim, J.
NETTESHEIM, J.
The issue in this case is whether a juvenile court in a CHIPS proceeding can enforce by contempt a "commitment" order against a parent for involuntary inpatient substance abuse treatment under the provisions of sec. 48.45, Stats., and outside the provisions of ch. 51, Stats., and the constitutional requirements of Lessard v. Schmidt, 349 F. Supp. 1078 (E.D. Wis. 1972), vacated, 414 U.S. 473 (1974), on remand, 379 F. Supp. 1376 (E.D. Wis. 1974), vacated, 421 U.S. 957 (1975), reinstated, 413 F. Supp. 1318 (E.D. Wis. 1976). C.S., the mother of J.S. and M.S., has been "committed" for such treatment under sec. 48.45 by the juvenile court. Her resistance to the "commitment" has resulted in her being found in contempt of court and an order confining her in the Racine county jail.
Although the history of this case reflects a protracted "tug-of-war" between the juvenile court and C.S., the essential facts are straightforward and not in dispute. On November 5, 1984, C.S. admitted to a petition alleging that her children were in need of protection and services pursuant to sec. 48.13(10), Stats. At the dispositional hearing, C.S. agreed to enter an inpatient treatment program at the Meridian House, a drug treatment center, and an order to such effect was entered. C.S. complied and entered the facility.
*220 Thereafter, C.S. left the facility without completing the entire program. This was followed by a number of repeated instances in which the juvenile court ordered C.S. back to the facility, followed by C.S.'s again leaving the facility without completing the program. Ultimately, the juvenile court turned to contempt as a means of seeking to enforce its order. This resulted in a contempt finding and an ensuing commitment order of November 15, 1985, which is the subject of this appeal. This order confirmed the earlier contempt finding, ordered C.S. to enter the "structured drug and alcohol program operated that by the Tellurian Community, Inc.," and directed that "during those periods that [C.S.] is not in the said program, she shall be committed to the Racine County Jail for up to six months or for as long as her contempt continues, whichever is shorter."
The issue in this case presents a question of the application of a statute to a set of facts. Such an issue presents a question of law. Maxey v. Redevelopment Auth., 120 Wis. 2d 13, 18, 353 N.W.2d 812, 815 (Ct. App. 1984). This standard of review also applies where the question is which of two statutes should apply. See id. at 22, 353 N.W.2d at 817. When considering a question of law, we owe no deference to the trial court's decision. Id. at 18, 353 N.W.2d at 815.
Section 51.001, Stats., provides:
(1) It is the policy of the state to assure the provision of a full range of treatment and rehabilitation services in the state for all mental disorders and developmental disabilities and for mental illness, alcoholism and other drug abuse. There shall be a unified system of prevention of such conditions and provision of services which will assure all people in need of care access to the least *221 restrictive treatment alternative appropriate to their needs, and movement through all treatment components to assure continuity of care.
(2) To protect personal liberties, no person who can be treated adequately outside of a hospital, institution or other inpatient facility may be involuntarily treated in such a facility.
Section 48.45, Stats., provides in part:
(1) If in the hearing of a case of a child alleged to be in a condition described in s. 48.12 or 48.13 it appears that any person 18 or older has been guilty of contributing to, encouraging, or tending to cause by any act or omisson, such condition of the child, the judge may make orders with respect to the conduct of such person in his or her relationship to the child, including orders determining the ability of the person to provide for the maintenance or care of the child and directing when, how and where funds for the maintenance or care shall be paid.
(2) No order to any person 18 or older under sub. (1) may be entered until the person is given an opportunity to be heard upon the allegation against him or her and the contemplated order of the court. The court shall cause notice of the time, place and purpose of the hearing to be served on the person personally at least 10 days before the date of hearing. The procedure in these cases shall, as far as practicable, be the same as in other cases in the court, and shall otherwise be the procedure followed in courts of equity. Any person 18 or older who fails to comply with any order issued by a court under this section may be proceeded against for contempt of court. If the person's conduct involves a crime, the person may be proceeded against under the criminal law.
*222 C.S. contends that the juvenile court is without authority to order involuntary inpatient treatment against a person pursuant to sec. 48.45, Stats. She argues that the language of sec. 51.001, Stats., reflects a legislative policy that all commitments are to be governed exclusively by the applicable sections of ch. 51, Stats. C.S. also argues that the juvenile court's action unconstitutionally deprives her of the constitutional protections mandated by Lessard.
Racine county and the juvenile court argue that ch. 51, Stats., does not govern these proceedings. Rather, they contend that sec. 48.45, Stats., vests the juvenile court with the exclusive authority to enter the type of order at issue in this case. As such, Racine county and the juvenile court contend that the constitutional protections afforded under sec. 48.45(2) pass constitutional muster. They further contend that the juvenile court has the inherent power to enter the contempt order at issue here because it is necessary to the juvenile court's discharge of its judicial duties.
Standing alone and read in isolation, sec. 48.45, Stats., arguably permits the juvenile court to enter a "commitment" order such as is present here. However, the effect, if any, of ch. 51, Stats., upon sec. 48.45 must first be determined before we can agree with Racine county and the juvenile court.
This question has not previously been decided in Wisconsin. Because its resolution impacts upon fundamental liberty interests and requires important statutory and constitutional interpretation, we certified this appeal to the Wisconsin Supreme Court. Certification, however, was refused.
Section 51.001(1), Stats., recites a legislative policy to create a "unified system" not only for combatting alcohol and drug related disorders, but also for *223 assuring that all persons in need of care are placed in the least restrictive treatment alternative. Chapter 51, Stats., goes on to set forth elaborate procedures to assure the pursuit of these goals. Insofar as patients' rights are concerned, ch. 51 is replete with constitutional due process and other statutory rights and protections accorded to those citizens whose detention or commitment is not only sought but also accomplished. Nowhere does ch. 51 exempt any class of citizens from its goals or procedures.
Racine county and the juvenile court attempt, however, to create such a special class exempted from the operation of ch. 51, Stats. This interpretation, however, flies directly in the face of the dictates of ch. 51 that a uniform system exist for the commitment and treatment of those afflicted with the disorders contemplated by the legislation.
Although sec. 48.45(2), Stats., sets out notice and hearing requirements, these are far less than those due process rights accorded in ch. 51, Stats., proceedings.[1] Moreover, sec. 51.61, Stats., sets out a patient's "bill of rights" for committed patients, while ch. 48, Stats., is totally silent on this subject. While appellate courts may construe constitutionally deficient statutes to include constitutionally required provisions, see State ex rel. Matalik v. Schubert, 57 Wis. 2d 315, 327, 204 N.W.2d 13, 18-19 (1973), this does not assure that the uniformity mandated by the legislature in ch. 51 will result.
*224 Section 48.45, Stats., contemplates orders made with respect to the conduct of an adult bearing upon his or her relationship to the child. The statute does not expressly authorize the commitment of such an adult. Chapter 51, Stats., on the other hand, specifically addresses the detention and commitment of those who are suspected to be in need of treatment and care for the very type of illness present in this case. Chapter 51 also specifically accords rights to those who have been committed for such treatment.
As such, ch. 51, Stats., stands as the more specific legislation on this subject. Statutory construction mandates the application of the more specific statute. State v. Amato, 126 Wis. 2d 212, 217-18, 376 N.W.2d 75, 78 (Ct. App. 1985). This is particularly so where the more specific statute, arguably in conflict with the more general, is enacted subsequent to the more general statute. See Gottsacker Real Estate Co. v. State, 121 Wis. 2d 264, 270, 359 N.W.2d 164, 168 (Ct. App. 1984). Here, sec. 48.45, Stats., was enacted by ch. 575, Laws of 1955. The present ch. 51, insofar as it represents the codification of Lessard, was enacted by ch. 430, Laws of 1975. We conclude the legislature intended ch. 51 to preempt the field of involuntary commitments in Wisconsin by this legislation. Therefore, on this statutory basis, we conclude that the "commitment" of C.S. under sec. 48.45 is invalid.
In addition, we conclude that the "commitment" in this case also violated C.S.'s due process rights. Freedom from involuntary commitment is an interest protected by the due process clause of the federal constitution. Addington v. Texas, 441 U.S. 418, 425 (1979). The United States Supreme Court "repeatedly *225 has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Id. (emphasis added). Due process requires a finding of dangerousness. O'Connor v. Donaldson, 422 U.S. 563, 576 (1975). A state "cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends." Id.
Section 48.45, Stats., does not require dangerousness as the standard for commitment. Indeed, the statute recites no standards for commitment. Here, regardless of whether the evidence reveals C.S. to be dangerous, she was "committed" without application of the dangerousness standard which is an essential ingredient of due process in commitment proceedings. As such, the commitment of C.S. was constitutionally defective.
Our conclusions do no violence to the aim of sec. 48.45, Stats., specifically, nor to the goals of ch. 48, Stats., generally. The statute contemplates orders regulating the conduct of an adult in his or her relationship to the child. Under this statute the juvenile court is empowered to condition C.S.'s ongoing contacts with and relationship to her children upon her obtaining treatment for her illness. The question here, however, is the appropriate sanction for violation of such an orderinvoluntary commitment outside the provisions of ch. 51, Stats., or appropriate termination, suspension, limitation or supervision of the adult's relationship and contacts with the child. We conclude it is the latter.
*226 We do not question the juvenile court's belief that C.S.'s parenting abilities might be significantly enhanced and that the Family Code's overriding goal of family unity would be served by C.S.'s obtaining the treatment ordered. However, we know of no law which permits legislative policy to serve as the altar upon which constitutional rights governing involuntary commitment are to be sacrificed.
Finally, Racine county and the juvenile court, invoking the doctrine of "inherent powers," contend that the authority to make the "commitment" order in this case is necessary in order that the court might carry out the judicial functions assigned to it under the Family Code. Specifically, the county and the juvenile court argue that authority to commit C.S. is essential if the juvenile court is to fulfill its obligation to pursue the reunification of C.S. and her children.
The doctrine of inherent powers is subject to two important limitations: first, the power must be such that it is related to the existence of the court and to the orderly and efficient exercise of its jurisdiction; second, the power must not extend the jurisdiction of the court nor abridge or negate those constitutional rights reserved to individuals. Jacobson v. Avestruz, 81 Wis. 2d 240, 247, 260 N.W.2d 267, 270 (1977). We conclude the attempt to invoke the "inherent powers" doctrine fails on both fronts.
The first factor is often analyzed in terms of the power being "necessary" to the court's discharge of its business. How commitment authority under sec. 48.45, Stats., is necessary to the juvenile court's discharge of its duties when alternative procedures, capable of accomplishing the same result, already exist under ch. 51, Stats., escapes us. While such *227 authority might be more efficient, this does not render it necessary. See Radmer v. Edell, 133 Wis. 2d 410, 414, 395 N.W.2d 629, 631 (Ct. App. 1986).
As to the second factor, we have already concluded that the "commitment" of C.S. under sec. 48.45, Stats., is constitutionally defective.
Therefore, we reverse the order of the circuit court adjudging C.S. in contempt of court and the ensuing order of November 15, 1985 imposing the involuntary commitment of C.S. and the alternative sentence to the county jail.[2]
By the Court.Orders reversed.
NOTES
[] Petition to review denied.
[] Petition to review denied.
[1] For example, ch. 51, Stats., mandates the right to jury trial, the right to counsel, the right to remain silent, the right to call witnesses, the right to cross-examination and a burden of clear and convincing evidence assigned to the county. See secs. 51.20 and 51.45, Stats.
[2] Racine county and the juvenile court also argue that C.S. cannot be heard to contest her "commitment" because she originally agreed to submit to inpatient treatment. Since we have concluded that the juvenile court was without authority to enter the order, consent to its entry is of no effect. See Kohler Co. v. DILHR, 81 Wis. 2d 11, 25, 259 N.W.2d 695, 701 (1977).

In addition, C.S. agreed only to the original order "committing" her to enter the Meridian facility. She did not agree to enter the Tellurian Community, Inc. facility, the placement site under the order appealed.