IN RE the COMMITMENT OF LOUISE M.:

MILWAUKEE COUNTY, Petitioner-Respondent-Petitioner,

v.

LOUISE M., Respondent-Appellant.

IN RE the COMMITMENT OF THEODORE S.:

MILWAUKEE COUNTY, Petitioner-Respondent-Petitioner,

v.

THEODORE S., Respondent-Appellant.

Supreme Court

*Nos. 95–0291–FT, 95–0292–FT. Oral argument September 5, 1996.—Decided November 27, 1996.*

(Also reported in 555 N.W.2d 814.)

163

For the petitioner-respondent-petitioner there were briefs by *Mark A. Grady* and *Office of Corporation Counsel*, Milwaukee and oral argument by *Mark A. Grady*.

For the respondents-appellants there was a brief by *Karen Kotecki* and *Legal Aid Society of Milwaukee, Inc.*, Milwaukee and oral argument by *Karen Kotecki*.

DONALD W. STEINMETZ, J. The issue in this case is whether the circuit court has the authority to review probable cause determinations by a court commissioner for involuntary detention under the Mental Health Act and, if so, what procedures and time guidelines apply. Because the circuit court retains its original jurisdiction over matters that it delegates to court commissioners, we hold that the circuit court does have the power to review such probable cause determinations. However, there is no statutory or constitutional right guaranteeing to the parties such a review. Consequently, we also hold that this is a discretionary review of the record to be held in a timely manner prior to the final hearing or trial in the matter.

On January 8, 1995, Louise M. was involuntarily detained pursuant to the Mental Health Act, WIS. STAT. § 51.15 (1)(a)1 & 2,[1] when a City of Milwaukee police

---

[1] WIS. STAT. § 51.15 (1)(a) provides as follows:

officer filed a statement of Emergency Detention by Law Enforcement Officer (Emergency Detention). Louise M. was removed from her residence, a nursing home, and taken against her will to a locked ward of the Milwaukee County Mental Health Complex (M. C.M.H.C.), an acute care psychiatric treatment facility. WIS. STAT. § 51.08.[2]

On January 11, 1995, the case was heard by a court commissioner who found probable cause to believe the allegations in the Emergency Detention statement. Louise M. was present at the probable cause hearing, represented by her court-appointed

---

(1) BASIS FOR DETENTION. (a) A law enforcement officer or other person authorized to take a child into custody under ch. 48 may take an individual into custody if the officer or person has cause to believe that such individual is mentally ill, drug dependent or developmentally disabled, and that the individual evidences any of the following:

1. A substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm.

2. A substantial probability of physical harm to other persons as manifested by evidence of recent homicidal or other violent behavior on his or her part, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm on his or her part.

[2] WIS. STAT. § 51.08 provides as follows:

Any county having a population of 500,000 or more may, pursuant to s. 46.17, establish and maintain a county mental health complex. The county mental health complex shall be a hospital devoted to the detention and care of drug addicts, alcoholics, chronic patients and mentally ill persons whose mental illness is acute. Such hospital shall be governed pursuant to s. 46.21. Treatment of alcoholics at the county mental health complex is subject to approval by the department under s. 51.45 (8). The county mental health complex established pursuant to this section is subject to rules promulgated by the department concerning hospital standards.

counsel from the Legal Aid Society of Milwaukee, Inc. At the close of the probable cause hearing, Louise M. filed a request for a hearing de novo by the circuit court.

In a hearing before Reserve Circuit Court Judge David L. Dancey, Louise M.'s request was denied. The circuit court ruled that it lacked the authority to conduct such a review. The court found that the case of *In the Matter of Mental Condition of C.M.B.*, 165 Wis. 2d 703, 478 N.W.2d 385 (1992) must be held to its facts and that *C.M.B.* dealt only with the right to a hearing de novo when a court commissioner dismisses an Emergency Detention at a probable cause hearing.

On the date of a scheduled jury trial, the case against Louise M. was dismissed by Judge Dancey. Milwaukee County was unable to proceed to the jury trial and informed the court that it could not meet its burden of proof. At the time of her release, Louise M. had been involuntarily detained at the M.C.M.H.C. for forced psychiatric treatment and denied her liberty for 17 days.

On the day before Louise M. was detained, January 7, 1995, Theodore S. was involuntarily detained pursuant to WIS. STAT. § 51.15 (1)(b).[3] Police officers removed Theodore S. from his home and took

---

[3] *Wis. Stat.* § 51.15(1)(b) provides:

(1) BASIS FOR DETENTION. (b) The officer's or person's belief shall be based on any of the following:

1. A specific recent overt act or attempt or threat to act or omission by the individual which is observed by the officer or person.

2. A specific recent overt act or attempt or threat to act or omission by the individual which is reliably reported to the officer or person by any other person, including any probation and parole agent authorized by the department to exercise control and supervision over a probationer or parolee.

him to the M.C.M.H.C. On January 11, 1995, the probate court commissioner found probable cause to believe the allegations in the Emergency Detention statement filed against Theodore S. Theodore S. was present at the probable cause hearing, represented by his court-appointed counsel from the Legal Aid Society of Milwaukee, Inc.

Like Louise M., Theodore S. filed a request for a de novo hearing by the circuit court shortly after the court commissioner's order. The circuit court, Judge Dancey, also denied his request. On the date set for a jury trial in Theodore S.'s case, Wednesday, January 25, 1995, the circuit court dismissed the case when Milwaukee County stated that it could not meet its burden of proof. Theodore S. had spent 19 days in detention at the time of his dismissal.

Leave to appeal to the court of appeals was filed and granted in the cases of Louise M. and Theodore S. and these cases were consolidated for appeal. The court of appeals reversed the circuit court, holding that the circuit court does have the authority to review a probable cause finding by a court commissioner. *Milwaukee Cty. v. Louise M. and Theodore S.*, 196 Wis. 2d 200, 538 N.W.2d 550 (Ct. App. 1995). The consolidated cases will be referred to as "*Louise M.*"

The court of appeals' decision in this case requires the circuit court to provide, upon a request, a de novo probable cause hearing to a subject of an involuntary mental commitment proceeding within 72 hours after a court commissioner has already found that probable cause exists to believe the allegations of the petition for commitment.

█

Because the scope of judicial authority and jurisdiction and the construction of statutes are

questions of law, this court owes no deference to the court of appeals in deciding the issues of this case. *In Matter of Mental Condition of C.M.B*, 165 Wis. 2d at 707.

The court of appeals in *Louise M.* relied heavily on this court's decision in the *C.M.B.* case in reaching its conclusion. In *C.M.B.*, this court held that an order or judgment of the circuit court is required for an appeal to the court of appeals in an involuntary commitment proceeding, and an order of a court commissioner is not the same as an order from the circuit court. *C.M.B.*, 165 Wis. 2d at 705; *cf., State v. Trongeau*, 135 Wis. 2d 188, 400 N.W.2d 12 (Ct. App. 1986) (requiring review by circuit court of court commissioners' dismissal orders in criminal context).

The facts in *C.M.B.* are simple. The court commissioner ordered the release of a woman after finding no probable cause to detain the subject, thereby dismissing the petition for involuntary detention. Because the court commissioner dismissed the petition, there was no final order of the circuit court from which to appeal. As a result, this court required that at the request of the county a circuit court must conduct a de novo hearing to review a court commissioner's decision to dismiss a petition for lack of probable cause. *Id.* This practice is necessary to create a final order that can be appealed directly to the court of appeals. *See id.* at 709; WIS. STAT. § 808.03(1).[4]

---

[4] WIS. STAT. § 808.03(1) provides:

(1) APPEALS AS OF RIGHT. A final judgment or a final order of a circuit court may be appealed as a matter of right to the court of appeals unless otherwise expressly provided by law. A final judgment or final order is a judgment or order entered in accordance with s. 806.06(1)(b) or 807.11 (2) or a disposition recorded in docket entries in ch. 799 cases or traffic regulation or municipal ordinance violation cases prosecuted in circuit court

The present cases are markedly different from the *C.M.B.* case. *C.M.B.* dealt with the dismissal of an action by a court commissioner. The dismissal terminated the entire matter in litigation between the parties and would meet the definition of a final order for purposes of appeal but for the fact that it was entered by a court commissioner and not a circuit court. Because there was no statutory provision that allowed a party to appeal this dismissal to either the circuit court or the court of appeals, this court required the circuit court to conduct a hearing so that a final, appealable order would be created. *Id.* at 705.

In the present cases, there was no final order from the court commissioner. Probable cause determinations are nonfinal orders. Much like a court's denial of a motion for summary judgment, such nonfinal orders are a procedural device which allow the matter to proceed to a final hearing or trial before the circuit court. This hearing or jury trial under ch. 51 is the last step which will automatically result in a final circuit court order appealable as of right pursuant to WIS. STAT. § 808.03(1). The key difference between *C.M.B.* and this case is the final and nonfinal nature of the respective orders from which review was sought.

The Wisconsin Statutes provide strict procedural guidelines that a court must follow in an involuntary detention proceeding. The procedures set out in ch. 51, specifically those involving Emergency Detention, meet the requirements of due process. *See In the Matter of Haskins*, 101 Wis. 2d 176, 191-92, 304 N.W.2d 125 (1980); *Contempt In Interest of J.S.*, 137 Wis. 2d 217, 223, 404 N.W.2d 79 (1987). Wisconsin Statutes

which disposes of the entire matter in litigation as to one or more of the parties, whether rendered in an action or special proceeding.

§§ 51.15(4)(b) and 51.20(7)(a) require that a probable cause hearing be held within 72 hours of a subject's detention. The statutes allow a circuit court to delegate the duty to hold these hearings to a court commissioner as was done in the present cases. WIS. STAT. § 757.69(1)(h). If probable cause to believe the allegations of the petition is found to exist, two experts are appointed by the court to examine the subject and file reports pursuant to WIS. STAT. § 51.20(9). A final hearing by the circuit court must then be held on the petition within 14 days of the subject's detention. WIS. STAT. § 51.20(7)(c). Alternatively, the subject can request a jury trial which then must be held within 21 days of the subject's detention. WIS. STAT. § 51.20(8)(bm). These deadlines are jurisdictional and the court loses competency to proceed if they are not met. *State ex rel. Lockman v. Gerhardstein*, 107 Wis. 2d 325, 320 N.W.2d 27 (Ct. App. 1982).

Coupled with these strict statutory requirements, the court of appeals' *Louise M.* decision creates a tremendous burden on the legal system for involuntary mental commitment cases. Under the appellate court decision, a probable cause hearing will be held by a court commissioner within 72 hours of the subject's detention at the facility; then, upon request, another probable cause hearing must be held by the circuit court within 72 hours of the commissioner's hearing. Yet another hearing must then be held a few days thereafter, given the requirement that a final hearing be held within 14 days of detention. This results in three court hearings to determine essentially the same issue within a two-week span of time.

Such requirements as the court of appeals mandates in *Louise M.* would further burden the already strained resources of Wisconsin circuit courts

and would defeat the purpose of using court commissioners to promote judicial efficiency. If the circuit court were required to conduct a de novo hearing in every case in which a party requests a review, then there would be little need for court commissioners in the mental health context. Additionally, the likelihood that witnesses would be reluctant to appear three times in a short period of time could make the process difficult or impossible. The procedures required by the court of appeals in *Louise M.* are impractical and unmanageable in light of the limited resources and expanding workload of the circuit courts.

■

The Wisconsin Constitution provides that "the circuit court shall have original jurisdiction in all matters civil and criminal within this state and such appellate jurisdiction as the legislature may provide by law." Wis. Const. art. VII, § 8. Although the legislature has not provided the circuit courts with appellate jurisdiction over ch. 51 actions, the circuit court has the right to review these probable cause determinations because it retains its original jurisdiction even when it delegates its authority to a court commissioner. *See In the Matter of the Mental Condition of C.M.B.*, 165 Wis. 2d at 712. If the circuit court did not retain its original jurisdiction, "circuit court judges might be less inclined to delegate their authority to court commissioners knowing that in doing so they have stripped themselves of power over matters of which they have original jurisdiction." *Id.* In order for the use of court commissioners to be effective, then, it is only logical to conclude that the circuit court loses none of its power through delegation.

The United States Constitution provides that "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III, § 1. Despite this constitutional provision, federal district judges may still delegate some of their authority to magistrate judges in the same manner that circuit court judges delegate to court commissioners. Courts have held that such delegation of certain duties to appointed magistrates does not violate the Constitution because the district judges do not delegate away their judicial power in such matters. *See Pacemaker Diagnostic Clinic of America v. Instromedix*, 725 F.2d 537 (9th Cir. 1984), *cert. denied*, 469 U.S. 824 (1984) (Article III requires that federal district judges retain their judicial power even if they delegate some authority to court-appointed magistrates). *See generally Noorlander v. Ciccone*, 489 F.2d 642 (8th Cir. 1973) (upholding rule providing for delegation of authority by district judges to magistrates to conduct preliminary evidentiary hearings). This is because the magistrate system "permits. . .control over specific cases by the resumption of district court jurisdiction on the court's own initiative." *Pacemaker*, 725 F.2d at 544.

Similar to the federal courts, the circuit court in our state does not lose its original jurisdiction simply by delegating some power to court commissioners. Despite the delegation of authority to the court commissioner to conduct a probable cause hearing, the circuit court retains jurisdiction by virtue of the Wisconsin Constitution and within that court's discretion it may review the finding. However, the

174

circuit court is not required to conduct such a review as of right.

■

It has been held that the right to appeal is generally not constitutional, but the right to appeal is primarily a creature of statute. *See State v. Rabe*, 96 Wis. 2d 48, 59, 291 N.W.2d 809 (1980). *See also In re Brand*, 251 Wis. 531, 536, 30 N.W.2d 238 (1947), citing *Western Union R. Co. v. Dickson*, 30 Wis. 389 (1882). There is no inherent duty to provide a review of the court commissioner's finding of probable cause. There is no constitutional requirement that a subject be given a right to a de novo probable cause hearing in the circuit court. There is no statutory right to such a review in WIS. STAT. § 51.20(15).[5] Wisconsin Statutes § 808.03(2)[6] does not create a right to "appeal" a court commissioner's order to the circuit court; it only creates a right to seek leave to appeal a nonfinal circuit court order.

---

[5] WIS. STAT. § 51.20(15) provides as follows:

> An appeal may be taken to the court of appeals within the time period specified in s. 808.04(3) in accordance with s. 809.40 by the subject of the petition or the individual's guardian, by any petitioner or by the representative of the public.

[6] WIS. STAT. § 808.03(2) provides as follows:

> **(2)** APPEALS BY PERMISSION. A judgment or order not appealable as a matter of right under sub. (1) may be appealed to the court of appeals in advance of a final judgment or order upon leave granted by the court if it determines that an appeal will:
>
> (a) Materially advance the termination of the litigation or clarify further proceedings in the litigation;
>
> (b) Protect the petitioner from substantial or irreparable injury; or
>
> (c) Clarify an issue of general importance in the administration of justice.

The court commissioner's order is not a final order. Unlike a final order where a right to appeal is guaranteed by WIS. STAT. § 808.03(1), the court of appeals' authority to review nonfinal orders of circuit courts is discretionary. WIS. STAT. § 808.03(2). Similarly, the circuit court's authority to review nonfinal orders of court commissioners should be discretionary.

In the past when the legislature has wanted to guarantee the right to a review of a court commissioner's decision by a circuit court, it has written such a right directly into the statutes. Currently, an absolute right to review of a court commissioner's decision by a circuit court exists, by creation of statute, in juvenile, small claims, and family court actions upon motion of either party. WIS. STAT. §§ 757.69(1)(g), 799.207(3)(a), 767.13(6). Because of its obvious absence from the statutes, there is no reason to conclude that the legislature has mandated any circuit court review of a commissioner's nonfinal orders.

There is a need for judges to be able to review decisions of the court commissioners if the judge so desires because court commissioners are not elected officials who are accountable to the people. However, the judge, an elected official, has indicated confidence in the abilities of the court commissioner by virtue of the appointment to that post. If the judge did not find the commissioner competent and fair, the judge would likely not have chosen that individual to ease the court's workload. Consequently, not all of the commissioner's decisions should be subject to de novo review.

■

Nothing prevents a circuit court from reviewing the record of a probable cause hearing if it wishes to do so as part of its retained original jurisdiction to review commissioners' decisions, but nothing gives the subject a right to such a review. Among the factors that a circuit court may want to take into consideration in deciding whether to grant a review are 1) the severity of the conditions of confinement, including the amount and type of psychotropic medication, if any, being administered to the detainee, 2) the amount of time that elapsed between the initial detention of the individual and the probable cause hearing, 3) whether a request has been made for a jury trial up to that point, thereby potentially lengthening the time spent in detention, and 4) the extent of the testimony at the probable cause hearing, including whether the detainee was present to testify and whether there was psychiatric testimony presented on behalf of the individual. These and other factors should provide the court with guidance in determining whether to grant the requested review.

■

The circuit court within the judge's discretion may review the record in the mental commitment context just as it does in the criminal court context. The doctors' reports, the Emergency Detention statement, the petition, and other documentation should provide sufficient grounds for the judge to render an informed decision if he or she chooses to review the court commissioner's decision.[7] A mandatory de novo

---

[7] In the cases of Louise M. and Theodore S., the record reflects that the probable cause hearing before the court commissioner was reported by a court reporter. Such

hearing would, in this court's opinion, be a misuse of the judicial resources of the circuit court.

If the circuit court judge chooses to conduct a review based on the record, it shall be timely done after the probable cause determination and before the final hearing or the jury trial. A discretionary practice of reviewing the court commissioners' probable cause determinations within a reasonable time prior to the final hearing or trial is sufficient to protect the liberty interests of the detainee without overburdening the judicial system.

For the foregoing reasons, this court affirms the court of appeals' decision insofar as it held that the circuit court does have authority to review a court commissioner's order finding probable cause to proceed in an involuntary commitment action. This court reverses the court of appeals' decision that such review is mandatory and requires a hearing de novo within 72 hours after the probable cause hearing. We hold that the circuit court may conduct a discretionary review of a court commissioner's probable cause determination at any time prior to the final hearing or trial in the matter.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part.

transcripts may also be helpful to the circuit court when reviewing the court commissioner's decisions.