**2026 WI 23**

# Supreme Court of Wisconsin



OUTAGAMIE COUNTY,
*Petitioner-Respondent-Petitioner*,

*v.*

M.J.B.,
*Respondent-Appellant.*

No. 2024AP250
Decided June 26, 2026

REVIEW of a decision of the Court of Appeals

Outagamie County Circuit Court (Yadira Rein, J.) No. 2023ME194

SUSAN M. CRAWFORD, J., delivered the majority opinion for a unanimous Court.

¶1   SUSAN M. CRAWFORD, J.   Outagamie County seeks review of a court of appeals decision reversing circuit court orders for Mark's[1] involuntary commitment under WIS. STAT. § 51.20 (2023–24)[2] and for his involuntary medication and treatment under WIS. STAT. § 51.61(1)(g). The

---

[1] For ease of reading and to protect the confidentiality of these proceedings, we use the pseudonym "Mark" to refer to the respondent in this case.

[2] All subsequent references to the Wisconsin Statutes are to the 2023–24 version unless otherwise indicated.

question presented is whether a circuit court loses competency to proceed if an examiner's report is not accessible to counsel at least 48 hours in advance of a final hearing, as required by WIS. STAT. § 51.20(10)(b).

¶2     We hold that, because the deadline for counsel's access to the examiners' reports is not central to Chapter 51's statutory scheme, the violation of the statute did not deprive the circuit court of competency to proceed and is appropriately reviewed for harmless error. We further hold that the lack of compliance with § 51.20(10)(b) did not affect Mark's substantial rights and was therefore harmless. Accordingly, we reverse the decision of the court of appeals and affirm the circuit court's orders of commitment and involuntary medication and treatment.

## I.  BACKGROUND

¶3     In early January of 2023, Mark was criminally charged based on allegations that he damaged property at his mother's home. In June of 2023, Mark was admitted for inpatient evaluation of his competency to proceed to trial pursuant to WIS. STAT. § 971.14. After being assessed by state mental health professionals, Mark was placed in emergency detention on August 23, 2023, under WIS. STAT. § 51.15, commencing proceedings for an involuntary civil commitment.

¶4     At a hearing on August 28, 2023, the circuit court found probable cause to proceed with involuntary commitment under WIS. STAT. § 51.20. The court scheduled a final hearing for September 6, 2023, the fourteenth day after Mark's initial detention and the latest date allowed under the statute. *See* WIS. STAT. § 51.20(7)(c). In accordance with WIS. STAT. § 51.20(9)(a), the court appointed two examiners to examine Mark and prepare written reports to be received by the court no later than 48 hours before the final hearing.

¶5     Mark was subsequently examined by Dr. Denise Valenti-Hein, a psychologist, and Dr. J. R. Musunuru, a psychiatrist. Dr. Valenti-Hein's examination report was filed on Friday, September 1, 2023. Dr. Musunuru faxed his report to the circuit court clerk at 7:48 a.m. on Saturday, September 2, 2023. However, because that Monday was Labor Day, the report was not electronically filed by the court until Tuesday, September 5, 2023, following the holiday.

¶6     At the final hearing on September 6, 2023, Mark's counsel advised the circuit court that Dr. Musunuru's report was electronically

2

filed on September 5, less than 48 hours before the final hearing, and that was when he obtained access to it. He argued that, because WIS. STAT. § 51.20(10)(b) requires that counsel have access to the report at least 48 hours before the hearing, the circuit court lost its competency over the case. Mark declined to request a postponement of the final hearing.

¶7 In response, the County's counsel stated that he "didn't disagree" that the statute required that counsel have access to the report at least 48 hours before the hearing. He stated that he saw the report at the same time as Mark's counsel. The County argued that the error did not deprive the circuit court of competency to proceed. The County advised the court that it did not intend to call Dr. Musunuru as a witness, and urged the court to proceed with the hearing on grounds that the error did not affect Mark's substantial rights.

¶8 The circuit court found that it had competency to proceed. The court further ruled that, because neither party intended to call Dr. Musunuru as a witness or to ask the court to rely on his report, counsel's late access to the report did not affect Mark's substantial rights. The court proceeded with the final hearing. At the close of the hearing, the court ordered Mark's involuntary commitment for a period of six months as well as the involuntary administration of medication and treatment.

¶9 Mark appealed the orders. The court of appeals reversed, concluding that Mark's counsel's lack of access to the examiner's report at least 48 hours before the final hearing, as required by statute, deprived the circuit court of competency to proceed.

## II. STANDARD OF REVIEW

¶10 The issues raised present questions of statutory interpretation and application, both of which this court reviews de novo. *See McNeil v. Hansen*, 2007 WI 56, ¶7, 300 Wis. 2d 358, 731 N.W.2d 273. Whether a court has competency over a proceeding also presents a question of law that this court reviews de novo. *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶7, 273 Wis. 2d 76, 681 N.W.2d 190. Whether an error is harmless "likewise presents a question of law for our independent review." *State v. Nelson*, 2014 WI 70, ¶18, 355 Wis. 2d 722, 849 N.W.2d 317.

### III.  DISCUSSION

¶11    We note that the parties dispute whether Mark proved that his counsel did not have access to the examiner's report at least 48 hours before the final hearing. We need not resolve this factual dispute. Assuming that Mark's counsel did not have access to Dr. Musunuru's report until September 5, 2023, we hold that a failure to comply with the 48-hour deadline does not cause the circuit court to lose its competency to proceed and, further, that the error here did not affect Mark's substantial rights.

### A.  NONCOMPLIANCE WITH THE 48-HOUR DEADLINE UNDER Wis. Stat. § 51.20(10)(b) DOES NOT CAUSE A CIRCUIT COURT TO LOSE COMPETENCY.

¶12    We turn first to whether counsel's lack of access to the examiner's report at least 48 hours before the final hearing caused the circuit court to lose competency over the proceeding. We hold that it did not.

¶13    A circuit court's competency refers to its "'ability to exercise the subject-matter jurisdiction vested in it' by Article VII, Section 8 of the Wisconsin Constitution." *Village of Elm Grove v. Brefka*, 2013 WI 54, ¶16, 348 Wis. 2d 282, 832 N.W.2d 121, *amended*, 2013 WI 86, 350 Wis. 2d 724, 838 N.W.2d 87 (quoting *Mikrut*, 273 Wis. 2d 76, ¶9). Because the circuit court's jurisdiction is conferred by the Wisconsin Constitution, not by act of the legislature, "the subject matter jurisdiction of the circuit courts cannot be curtailed by state statute." *See Mikrut*, 273 Wis. 2d 76, ¶8. However, a circuit court's competency—its ability to exercise its subject matter jurisdiction in a particular case—"may be affected by noncompliance with statutory requirements pertaining to the invocation of that jurisdiction in individual cases." *Id.*, ¶9.

¶14    The parties frame the issue regarding the circuit court's competency in terms of whether the statutory deadline is mandatory or directory. However, whether a statutory deadline is mandatory or directory does not answer whether a failure to comply with the deadline deprives a circuit court of competency to proceed. *See id.*, ¶10, n.3. "Whether a particular failure to comply with a statutory mandate implicates the circuit court's competency depends upon an evaluation of the effect of noncompliance on the court's power to proceed in the particular case before the court." *Id.*, ¶10. "[N]oncompliance with a mandatory statute does not always translate into a loss of competency."

*Brefka*, 348 Wis. 2d 282, ¶17. Rather, the failure to comply with a statute causes a circuit court to lose competency to proceed only if the statutory requirement is "central to the statutory scheme." *Id.*, ¶18.

¶15 Thus, in determining whether the violation of a statute causes a circuit court to lose competency, we examine the role of the statutory requirement within the statutory scheme. *See Walworth County v. M.R.M.*, 2023 WI 59, ¶20, 408 Wis. 2d 316, 992 N.W.2d 809. In conducting this analysis, we ask "whether the legislative purpose of the statutory scheme could be fulfilled[] without strictly following the statutory directive." *State v. Bollig*, 222 Wis. 2d 558, 567–68, 587 N.W.2d 908 (Ct. App. 1998).

¶16 Chapter 51 of the Wisconsin Statutes establishes patients' rights and the legal procedures for involuntary mental health treatment in Wisconsin. The stated purposes of the chapter are "to assure the provision of a full range of treatment and rehabilitation services in the state for all mental disorders and developmental disabilities and for mental illness, alcoholism and other drug abuse," and "[t]o protect personal liberties" by ensuring that "no person who can be treated adequately outside of a hospital, institution or other inpatient facility may be involuntarily treated in such a facility." WIS. STAT. §§ 51.001(1)–(2). We thus evaluate how central the 48-hour requirement is in light of these purposes. Our task is to determine if these goals can be met if counsel does not have access to the report before the 48-hour time limit specified in § 51.20(10)(b).

¶17 We turn to an examination of the role § 51.20 plays within the overall statutory scheme. This court has recognized that § 51.20 provides "strict procedural guidelines that a court must follow in an involuntary detention proceeding." *Milwaukee County v. Louise M.*, 205 Wis. 2d 162, 171, 555 N.W.2d 807 (1996). Section 51.20 was enacted as part of a comprehensive overhaul of the state's mental health laws in response to a federal district court's decision holding that the previous statutory scheme for involuntary commitment violated due process.[3] This court has

---

[3] *See State v. Gebarski*, 90 Wis. 2d 754, 761, 280 N.W.2d 672 (1979); *Lessard v. Schmidt*, 349 F. Supp. 1078, 1091–92 (E.D. Wis. 1972), *vacated*, 414 U.S. 473 (1974), *judgment reentered*, 379 F. Supp. 1376 (E.D. Wis. 1974), *vacated and remanded on procedural grounds*, 421 U.S. 957 (1975), *judgment reentered*, 413 F. Supp. 1318 (E.D. Wis. 1976). The federal district court held that due process requires that persons detained for civil involuntary commitment, under most circumstances, receive a preliminary hearing within 48 hours, representation by counsel, a final hearing

recognized that the procedural protections of § 51.20 and related provisions evince Chapter 51's "contextually manifest purpose to afford due process protections." *Waukesha County v. E.J.W.*, 2021 WI 85, ¶32, 399 Wis. 2d 471, 966 N.W.2d 590. These strict procedures, which allow for the involuntary commitment of individuals for mental health treatment while protecting their due process rights, support the broader purposes of Chapter 51 of ensuring that a full range of mental health services is provided to Wisconsin residents while limiting involuntary treatment to those who cannot otherwise be adequately treated.

¶18 We next examine how the 48-hour requirement functions within the procedures for involuntary commitment established by § 51.20. We briefly summarize those procedures, as relevant to the issue before us. Upon the filing of a petition for examination for involuntary commitment, a circuit court must ensure that the subject individual is represented by adversary counsel by referring the individual to the state public defender for appointment of counsel. WIS. STAT. § 51.20(3). A court must hold a hearing within 72 hours after a person is placed in emergency detention to determine whether there is probable cause to believe the allegations made in support of involuntary commitment. WIS. STAT. § 51.20(7). If probable cause is found, the court appoints two qualified examiners and orders them to conduct examinations of the person and to report their findings to the court. WIS. STAT. §§ 51.20(9)(a)1., 5. The examiners must personally observe and examine the individual, making conclusions "based on [their] beliefs to a reasonable degree of medical certainty, or professional certainty if an examiner is a psychologist, in regard to the existence of the [individual's mental] conditions . . . and the appropriateness of various treatment modalities or facilities." § 51.20(9)(a)5. Written reports of all such examinations are filed with the court. *Id*. Counsel must have access to the reports at least 48 hours before the final hearing. *See* § 51.20(10)(b). The final hearing must be held within 14 days of the emergency detention, subject to certain exceptions. WIS. STAT. § 51.20(7)(c).

¶19 The requirement that the subject individual's counsel have access to the reports at least 48 hours before the final hearing is related to

---

within two weeks of being taken into custody, and adequate notice of all rights, including the right to a jury trial. The legislature codified these due process requirements in § 51.20 as part of a comprehensive reform of the state's mental health laws. *See* Chapter 430, Laws of 1975.

the statutory rights to representation by counsel and an examination by two qualified professionals who must file written reports of their findings. Requiring the examiners to file written reports ensures that the individual receives notice of evidence that may be offered in support of involuntary commitment. Imposing a time limit by which counsel must have access to the examiners' reports ensures that counsel has sufficient time to prepare for the final hearing and potential cross-examination of witnesses, enabling the subject individual to mount a defense.

¶20    Thus, we arrive at the question of whether the 48-hour time limit under § 51.20(10)(b) is "central to the statutory scheme." *See Brefka*, 348 Wis. 2d 282, ¶18. Wisconsin courts have held that other statutory time limits imposed by § 51.20 are so central to the statutory scheme that their violation deprives a circuit court of competency to proceed. *See Dodge County v. Ryan E.M.*, 2002 WI App 71, ¶12, 252 Wis. 2d 490, 642 N.W.2d 592 (failure to hold a probable cause hearing within 72 hours after an individual is taken into custody, as required by WIS. STAT. § 51.20(7)(a), results in circuit court's loss of competency); *Louise M.*, 205 Wis. 2d at 172 (circuit court loses competency if a final hearing does not occur within 14 days of the individual's detention under WIS. STAT. § 51.20(7)(c)); *M.R.M.*, 408 Wis. 2d 316, ¶26 (circuit court loses competency to extend a commitment order under WIS. STAT. § 51.20(13)(g)1.). These provisions, all of which establish deadlines for the circuit court to act, are central to the statutory scheme because they reflect the legislature's balance of the competing interests of protecting people from harm and "prevent[ing] individuals from being detained any longer than necessary before holding a hearing." *Ryan E.M.*, 252 Wis. 2d 490, ¶11.

¶21    Although many "loss of competency" cases involve a failure to comply with statutory time limitations, a variety of defects in statutory procedure may cause a loss of competency. *Mikrut*, 273 Wis. 2d 76, ¶12 (citing cases); *see, e.g., In re Guardianship & Protective Placement of Muriel K.*, 2002 WI App 194, ¶1, 256 Wis. 2d 1000, 651 N.W.2d 890 (circuit court lost competency to enter guardianship and protective placement orders because it did not comply with statute requiring the subject individual to be present at the hearing); *Cepukenas v. Cepukenas*, 221 Wis. 2d 166, 170, 584 N.W.2d 227 (Ct. App. 1998) (absence of statutory prerequisites for court to order modification of a child support order issued by another state deprived circuit court of competency). In each of these cases, the court determined that the provision was central to the statutory scheme provided by the legislature for the exercise of jurisdiction over the case, or in other words, was one "pertaining to the invocation of that jurisdiction

in individual cases." *Mikrut*, 273 Wis. 2d 76, ¶9. By contrast, this court held that a court's failure to advise a juvenile of the right to judicial substitution, as required by statute, was not central to the statutory scheme and did not result in the loss of competency. *State v. Kywanda F.*, 200 Wis. 2d 26, 29, 546 N.W.2d 440 (1996) (distinguishing the provision at issue from those setting strict time limits for "critical stages" in the adjudication of juvenile cases which, if violated, result in a loss of competency).

¶22     The provision at issue here, § 51.20(10)(b), does not establish a timeframe within which the circuit court must exercise its jurisdiction, establish conditions that must be met for the proper exercise of jurisdiction, or otherwise implicate the court's power to proceed in the case. A failure to strictly comply with the 48-hour requirement does not defeat Chapter 51's broader purposes of ensuring that the full range of mental health treatment is available to state residents and that no person is institutionalized who can be adequately treated outside of an institutional setting. Instead, the 48-hour time limit in § 51.20(10)(b) sets an interim deadline intended to ensure that court-appointed examiners timely complete their written reports so that counsel for individuals subject to commitment have access to the reports before the final hearing. Although this time limit protects important interests, nothing in the statutory scheme suggests that the legislature intended that failing to make the examiners' reports accessible to counsel at least 48 hours before the final hearing would terminate the court's exercise of jurisdiction over the case.

¶23     We conclude that the requirement that counsel have access to examiners' reports at least 48 hours before the final hearing is not central to the statutory scheme in § 51.20 for the circuit court's exercise of jurisdiction in involuntary civil commitment cases. Accordingly, the failure to make an examiner's report available to counsel within the time limit, in violation of § 51.20(10)(b), does not deprive a circuit court of competency to proceed.

B.  A VIOLATION OF THE 48-HOUR DEADLINE UNDER WIS. STAT. § 51.20(10)(b)
    DOES NOT REQUIRE REVERSAL OF MARK'S INVOLUNTARY COMMITMENT.

¶24     Having concluded that a violation of WIS. STAT. § 51.20(10)(b) does not deprive a circuit court of competency to proceed, we must consider whether it nevertheless requires a reversal of the order of commitment. WISCONSIN STAT. § 51.20(10)(c) states in relevant part:

"The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings that does not affect the substantial rights of either party." We interpret the language of § 51.20(10)(c) as requiring harmless error review. *See Martindale v. Ripp*, 2001 WI 113, ¶30, 246 Wis. 2d 67, 629 N.W.2d 698 ("The appellate court must conduct a harmless error analysis to determine whether the error affected the substantial rights of the party.") (citation modified). *See also D.S. v. Racine County*, 142 Wis. 2d 129, 135–36, 416 N.W.2d 292 (1987) (citing WIS. STAT. § 51.20(10)(c) and holding that a petition's noncompliance with Chapter 51 requirements did not warrant reversal of the commitment where no prejudice was shown).

¶25    "For an error to affect the substantial rights of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue." *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶28, 246 Wis. 2d 1, 629 N.W.2d 768. This court has held that "[i]f the error at issue is not sufficient to undermine the reviewing court's confidence in the outcome of the proceeding, the error is harmless." *Id.*

¶26    Mark asserts that the violation of § 51.20(10)(b) was not harmless because it adversely affected his substantial rights. Mark claims his counsel's lack of access to Dr. Musunuru's report at least 48 hours before the hearing undermined his right to the effective assistance of counsel and eliminated the due process safeguard of having two examiners for involuntary commitment. Lastly, Mark claims the lack of timely access to the report affected his rights to present a defense and to cross-examine witnesses, although he does not demonstrate these harms.

¶27    No evidence suggests the violation of the 48-hour deadline affected the outcome of Mark's involuntary commitment proceedings. Mark does not attempt to establish that lack of access to Dr. Musunuru's report impaired counsel's ability to defend him at the hearing. He was examined by two qualified medical professionals, as required by the statute and ordered by the circuit court. Neither party called Dr. Musunuru as a witness. Nothing in Dr. Musunuru's report called into question Mark's mental illness or that he was a proper subject for treatment, or otherwise undermined the circuit court's decision.

¶28    At the final hearing, Dr. Valenti-Hein's examination report was admitted into evidence, as well as testimony from Dr. Valenti-Hein, Mark's mother, and the County's clinical therapist who assessed Mark as part of his initial commitment. Mark does not dispute that their testimony

and Dr. Valenti-Hein's report supported the circuit court's commitment order. Nor does he argue that the evidence presented was insufficient to support the orders of involuntary commitment and involuntary medication. Moreover, Mark was not deprived of his right to a contested hearing, his right to demand a jury trial, his right to cross-examine witnesses, or his right to testify on his own behalf. He received a timely final hearing and was not detained beyond the statutory limit.

¶29    The circuit court correctly determined that counsel's lack of timely access to the report, despite the violation of § 51.20(10)(b), did not affect Mark's substantial rights. Pursuant to WIS. STAT. § 51.10(10)(c), the circuit court properly disregarded the error as harmless. Mark presents no grounds for reversal of the orders for involuntary commitment and involuntary medication.

## IV.  CONCLUSION

¶30    Chapter 51 manifests a purpose to protect the due process rights and liberty interests of individuals subject to involuntary commitment for mental health treatment. Section 51.20 provides a detailed framework for the circuit court's exercise of jurisdiction in involuntary commitment cases. The 48-hour time limit for counsel's access to examiners' written reports in WIS. STAT. § 51.20(10)(b) is not so "central" to that statutory scheme that failure to comply with the 48-hour deadline deprives a circuit court of competency over the proceedings. The failure to give the subject individual's counsel access to an examiner's report at least 48 hours before the final hearing is properly reviewed for harmless error, and presents no basis for reversal if the error does not affect the substantial rights of the individual. Because Mark's substantial rights were not affected by the error here, the circuit court's orders for involuntary commitment and medication should not have been reversed.

*By the Court.*—The decision of the court of appeals is reversed.